| | |
|---|---|
| STATE OF MINNESOTA | DISTRICT COURT |
| COUNTY OF DAKOTA | FIRST JUDICIAL DISTRICT |

Angell Zschokke,

        Plaintiff,

vs.

Zale Delaware, Inc.,

        Defendant.

Court File No.: _____

**SUMMONS**

THIS SUMMONS IS DIRECTED TO DEFENDANT ZALE DELAWARE, INC., AND ITS REGISTERED AGENT OF SERVICE, Prentice-Hall Corp. System, Inc., 380 Jackson Street, Suite 700, Saint Paul, Minnesota 55102:

1. **YOU ARE BEING SUED.** The Plaintiff has started a lawsuit against you. The Plaintiff's Complaint against you is attached to this Summons. Do not throw these papers away. They are official papers that affect your rights. You must respond to this lawsuit even though it may not yet be filed with the Court and there may be no court file number on this Summons.

2. **YOU MUST REPLY WITHIN 20 DAYS TO PROTECT YOUR RIGHTS.** You must give or mail to the person who signed this Summons a **written response** called an Answer within 20 days of the date on which you received this Summons. You must send a copy of your Answer to the person who signed this Summons located at:

    HALUNEN & ASSOCIATES
    1650 IDS Center
    80 South Eighth Street
    Minneapolis, MN 55402
    Telephone: 612-605-4098
    Facsimile: 612-605-4099

3. **YOU MUST RESPOND TO EACH CLAIM.** The Answer is your written response to the Plaintiff's Complaint. In your Answer you must state whether you agree or disagree with each paragraph of the Complaint. If you believe the Plaintiff should not be given everything asked for in the Complaint, you must say so in your Answer.

4. **YOU WILL LOSE YOUR CASE IF YOU DO NOT SEND A WRITTEN RESPONSE TO THE COMPLAINT TO THE PERSON WHO SIGNED THIS SUMMONS.** If you do not Answer within 20 days, you will lose this case. You will not get to tell your side of the story, and the Court may decide against you and award the Plaintiff everything asked for in the Complaint. If you do not want to contest the claims stated in the Complaint, you do not need to respond. A default judgment can then be entered against you for the relief requested in the Complaint.

5. **LEGAL ASSISTANCE.** You may wish to get legal help from a lawyer. If you do not have a lawyer, the Court Administrator may have information about places where you can get legal assistance. **Even if you cannot get legal help, you must still provide a written Answer to protect your rights or you may lose the case.**

6. **ALTERNATE DISPUTE RESOLUTION.** The parties may agree to or be ordered to participate in an alternative dispute resolution process under Rule 114 of the Minnesota General Rules of Practice. You must still send your written response to the Complaint even if you expect to use alternative means of resolving this dispute.

Dated: June 20, 2014

HALUNEN & ASSOCIATES

_____
Clayton Halunen, #219721
Ross D. Stadheim, #0392475
1650 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: 612.605.4098
Facsimile: 612.605.4099

*ATTORNEYS FOR PLAINTIFF*

| STATE OF MINNESOTA | DISTRICT COURT |
|---|---|
| COUNTY OF DAKOTA | FIRST JUDICIAL DISTRICT |

Court File No.: _____

Angell Zschokke,

    Plaintiff,

v.

Zale Delaware, Inc.,

    Defendant.

**COMPLAINT AND JURY DEMAND**

Angell Zschokke ("Plaintiff"), for her Complaint against Zale Delaware, Inc. ("Defendant"), states and alleges as follows:

## PARTIES

1. Plaintiff is a resident of the City of Shoreview, County of Ramsey, State of Minnesota.

2. Defendant is a corporation with a location in the City of Burnsville, County of Dakota, State of Minnesota.

## JURISDICTION AND VENUE

3. The jurisdiction of this Court is invoked as the violations occurred in the State of Minnesota and involve state and federal law.

4. Venue is appropriate because Defendant transacts a substantial amount of business in the State of Minnesota and the facts giving rise to this action occurred within the borders of the State of Minnesota.

## FACTS

5.  Plaintiff was hired by Defendant as a store manager at its Burnsville Center location (#1802) on October 24, 2012. Throughout her employment, she was supervised by Stacee Ficek, District Manager.

6.  During the middle of the night on October 8, 2013, Plaintiff began experiencing excruciating back pain, causing her to go into the emergency room. Doctors then scanned her back using an MRI machine and determined that she had severe stenosis and impingement of the spinal canal on L3 and L4 of her lower vertebrae and recommended surgery as soon as possible. For the next six days, Plaintiff remained in the hospital on pain control medication.

7.  On October 10, 2013, Plaintiff called Angela Clayborne, Associate Benefits Analyst, and informed her of her hospitalization and need for surgery. Clayborne told her that, since she was not at Defendant for a year yet, she was ineligible for Family and Medical Leave Act ("FMLA") leave. However, she would become eligible in a matter of days. Clayborne then directed Plaintiff to Unum, Defendant's third party benefits provider, to request FMLA and Short Term Disability ("STD") leave.

8.  On October 17, 2013, Plaintiff notified Ficek of her surgery scheduled for October 23, 2013 and told her that she received a report of workability indicating that her recovery period would be 6 weeks.

9.  On October 23, 2013, Plaintiff had her previously scheduled surgery. Because her surgery did not go according to plan, she had to have two more surgeries on November 4 and 19, 2013. As required, Plaintiff remained in contact with Ficek and Clayborne, consistently updating them on her progress, schedule, and treatment plan.

10.     On October 30, 2013, former Defendant associate, Julissa Betting-Fuentes, informed Plaintiff that Ficek had given her job to Nikki Lundsford, the Gordon's Jeweler's manager at Burnsville Center (#4315), which is also owned by Defendant, and that she would be taking the Lundsford's position. This was a demotion because it was common knowledge that this Gordon's store would be closing. Indeed, the Burnsville Center Gordon's was the last remaining store of its kind in the region and closed in February 2014. Plaintiff was demoted while on FMLA leave.

11.     After learning this, Plaintiff called Ficek on November 1, 2013 and left a voicemail requesting an update. Ficek called Plaintiff back and asked for an update on Plaintiff's health. Plaintiff stated it was going well at this point, but she would need the full 6 weeks of recovery. Ficek then asked if her recovery would go beyond 6 weeks and Plaintiff replied that she did not know. Ficek then informed her that, despite the fact that she was on protected FMLA leave, Defendant chose to give her job to Lundsford and explained that she would be getting Lundsford's old job. Concerned that Defendant had not complied with its legal obligations, she asked if Defendant would hold the Gordon's position for her if her recovery period went over 6 weeks but was short of 12 weeks, which the FMLA provides for. Ficek stated that she "couldn't guarantee anything." This response and Ficek's lack of sympathy for her situation came as no surprise, as she previously told Plaintiff on August 22, 2013, that she used too many sick days and stated, "maybe this isn't the company for you." Plaintiff ended the conversation by assuring Ficek that she would try to get back to work as quickly as possible.

12.     On January 7, 2014, Plaintiff was given a report of workability, which scheduled her to return to work on January 19, 2014. Plaintiff called Ficek and left her a voicemail stating that she would be returning to work on that date, with restrictions. Plaintiff's restrictions were six

3

hours per day for two weeks and eight hours per day for one week. Additionally, Plaintiff was not to lift over ten pounds or do more than three hours of bending, twisting, turning, kneeling, squatting, or overhead reaching. Obviously, since Plaintiff was in jewelry sales, these restrictions were of no concern because she had rarely lifted over ten pounds and never moved in the ways described for an extended period of time. Ficek did not return Plaintiff's call.

13. On or around January 10, 2014, Linda Arriz, Human Resources, left a voicemail for Plaintiff, which declared that Plaintiff did not "quite understand how the process works." Plaintiff called Arriz back that same day, but she did not answer. Instead, Clayborne called and told Plaintiff that her FMLA would expire on January 19, 2014 and that Defendant would not hold her job past that day.

14. On January 13, 2014, Plaintiff called Arriz and was told that Human Resources needed to be sent the report of workability first before it could be determined whether she could come back. Arriz also said that it was up to Ficek to unilaterally accept or deny her restrictions and that, even if it was possible for her to perform the essential functions of her job with the restrictions, Defendant was under no obligation to accept them. Plaintiff, then ignorant of the accommodation laws that protected her, took this to mean that her return was contingent on Defendant's good graces. Plaintiff followed Arriz's directive and faxed her restrictions to Human Resources.

15. On January 14, 2014, Clayborne informed Plaintiff that Ficek would not allow her to return to work with the above restrictions. At no time did anyone at Defendant, including Ficek, engage in an interactive process with Plaintiff to see if her restrictions could be accommodated. Clayborne told Plaintiff that the only way she could return to work was if she obtained a new report of workability from her doctor, which stated that she was entirely without restriction.

4

Also during this call, Clayborne stated that she miscalculated Plaintiff's protected FMLA leave period. Instead, Defendant would now only hold her job until January 16, 2014.

16.     Plaintiff called her doctor on January 15, 2014. She explained that Defendant would not accept her restrictions, despite the fact that she never lifted over ten pounds and never did any extended bending, twisting, turning, or similar in her job. Reluctantly, her physician agreed to sign a new report of workability that stated she was without restriction, in order to save her job. Plaintiff then called Clayborne and told her that she was faxing in this new report. Clayborne acknowledged this, and told Plaintiff that she would be in touch with Ficek who would let her know what time she needed to be at work on January 16, 2014. That evening, Plaintiff sent Ficek a text message asking her the same. Shortly after she sent this text message, Plaintiff received a call from Arriz who stated that Defendant was questioning her physician's ethics. Arriz ended the conversation by stating she was contacting legal and instructed Plaintiff not to report to work.

17.     On January 17, 2014, Arriz called Plaintiff and told her that she could return to work on January 20, 2014. Ficek then called and gave Plaintiff her schedule for the next two weeks. Surprisingly, Ficek scheduled Plaintiff for eight days in a row, which also meant that she would be working 9 to 9.5 hour days typically. As Plaintiff had never been scheduled for this many days in a row, she asked why. Even with being aware of Plaintiff's actual restrictions, Ficek replied, "well you don't have any restrictions right?" Plaintiff, who valued her employment, reluctantly replied that she did not.

18.     On January 20, 2014, Plaintiff went upstairs at Burnsville Center to Defendant's Zales store #1802 to collect personal items to move them downstairs to the Gordon's store #4315. When she entered the Zales store, Lundsford called Plaintiff a "dirty manager" and

5

stated that she had "taken too many days off." Lundsford also stated that Defendant's employees resented the fact that she had taken too much time off.

19.     On January 26, 2014, Plaintiff received a phone call from Arriz. Arriz informed her that Defendant had two issues, (1) regarding Plaintiff's leave, and (2) regarding an alleged threat she made about her supervisor on January 21, 2014. Arriz did not go into detail, but simply told Plaintiff that an employee had stated she was a danger to the store and the employees' personal safety. Arriz instructed Plaintiff to vacate the premises immediately because she was being put on administrative leave, pending investigation.

20.     At around 7:00 p.m. on January 26, 2014, Arriz called Plaintiff and began asking questions about the supposed threat where it was alleged that Plaintiff stated "Stacee [Ficek] better watch out because I have a gun waiting for her." Plaintiff immediately declared that she did not make the above statement and explained herself. After hearing Plaintiff's explanation, Arriz appeared to be satisfied and moved on to addressing Plaintiff's leave. Arriz then asked Plaintiff why she had to be gone so many days. Plaintiff explained her surgeries and her serious health condition, yet again, and stated that she had kept Ficek up to date on her condition and progress. Plaintiff explained that, each and every time Ficek asked for a doctor's note, she provided one despite the fact that Ficek only required this of Plaintiff and no one else. Plaintiff then explained that many of her health issues, including her back, stemmed from her eight year childhood battle with Leukemia and intense chemotherapy she had to endure. She stated that her doctors referred to these effects as the "late effects" of her intense chemotherapy, a portion of which was connected and flowed through her spinal cord. Indeed, since 2007, Plaintiff has had 19 surgeries all of which her doctors state were related to these late effects. Throughout this conversation, Arriz repeatedly asked Plaintiff if her days off were approved and, each time

6

Plaintiff replied that Unum had approved all of her time through FMLA and STD. Arriz ended the conversation by stating that she would contact Plaintiff by January 28, 2014.

21. Plaintiff also previously explained her childhood battle with Leukemia and the impact her disease subsequently had on her current health to Ficek, in detail, in late 2012 or early 2013.

22. On or around January 30, 2014, Plaintiff sent an email to Arriz chronicling significant events during the period in question, similar to the above. Plaintiff ended the email by stating that she was "being discriminated against because [she] used [her] sick days and had to take a leave of absence for 12 weeks due to personal illness and surgeries." Defendant did not issue a response and did not investigate her complaint.

23. On January 31, 2014, Plaintiff called Arriz for an update on her status. Arriz told her that she had been "too busy" to do anything yet.

24. On February 3, 2014, Arriz called Plaintiff and informed her that she was terminated, effective February 6, 2014.

25. As a direct and proximate result of Defendant's illegal conduct, Plaintiff has suffered, and continues to suffer, emotional distress, humiliation, embarrassment, pain and suffering, loss of reputation, loss of enjoyment of life, lost wages and benefits, and has incurred attorneys' fees and expenses and other serious damages.

## CLAIMS

### COUNT ONE
### REPRISAL DISCRIMINATION IN VIOLATION OF
### THE MINNESOTA HUMAN RIGHTS ACT

Plaintiff realleges each and every paragraph of this Complaint.

26. Defendant, through its managers and officials acting on behalf of the Defendant and within the scope of their employment, engaged in unlawful employment practices involving

7

Plaintiff in violation of the Minnesota Human Rights Act, Minn. Stat. § 363A.01 *et. seq.* These practices include, but are not limited to: altering the terms and conditions of Plaintiff's employment and terminating her employment because of her report of discrimination and requests for reasonable accommodation.

27. Defendant failed to take all reasonable steps to prevent reprisal discrimination based upon Plaintiff's report of discrimination and requests for reasonable accommodation from occurring.

28. Plaintiff's report of discrimination and requests for reasonable accommodation were motivating factors in her termination.

29. The effect of the practices complained of above has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee because of her report and requests.

30. The unlawful employment practices complained above were intentional and were performed by Defendant with malice or reckless indifference to anti-discrimination laws, which protect Plaintiff.

31. As a direct and proximate result of Defendant's illegal conduct, Plaintiff has suffered, and continues to suffer, emotional distress, humiliation, embarrassment, pain and suffering, loss of reputation, loss of enjoyment of life, lost wages and benefits, and has incurred attorneys' fees and expenses and other serious damages.

## COUNT TWO
## DISABILITY DISCRIMINATION IN VIOLATION OF
## THE MINNESOTA HUMAN RIGHTS ACT

Plaintiff realleges each and every paragraph of this Complaint.

32. Defendant, through its managers and officials acting on behalf of the Defendant and within the scope of their employment, engaged in unlawful employment practices involving Plaintiff in violation of the Minnesota Human Rights Act, Minn. Stat. § 363A.01 *et. seq.* These practices include, but are not limited to: altering the terms and conditions of Plaintiff's employment by demoting and terminating her employment because of her disability.

33. Defendant failed to take all reasonable steps to prevent discrimination based upon Plaintiff's disability from occurring.

34. Plaintiff's disability was a motivating factor in her demotion and termination.

35. The effect of the practices complained of above has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affecting her status as an employee because of her disability.

36. The unlawful employment practices complained above were intentional and were performed by Defendant with malice or reckless indifference to anti-discrimination laws, which protect Plaintiff.

37. As a direct and proximate result of Defendant's illegal conduct, Plaintiff has suffered, and continues to suffer, emotional distress, humiliation, embarrassment, pain and suffering, loss of reputation, loss of enjoyment of life, lost wages and benefits, and has incurred attorneys' fees and expenses and other serious damages.

**COUNT THREE**
**FAILURE TO PROVIDE A REASONABLE ACCOMMODATION IN VIOLATION OF THE MINNESOTA HUMAN RIGHTS ACT**

Plaintiff realleges each and every paragraph of this Complaint.

38. Defendant, through its managers and officials acting on behalf of the Defendant and within the scope of their employment, engaged in unlawful employment practices involving

Plaintiff in violation of the Minnesota Human Rights Act, Minn. Stat. § 363A.01 *et. seq*. These practices include, but are not limited to: altering the terms and conditions of Plaintiff's employment by demoting and terminating her employment after it became known that she would need a reasonable accommodation and failing to reasonable accommodate Plaintiff's disability.

39. Defendant repeatedly failed to take all reasonable steps to reasonably accommodate Plaintiff's disability and did not engage in the interactive process.

40. The effect of the practices complained of above has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affecting her status as an employee because of her disability.

41. The unlawful employment practices complained above were intentional and were performed by Defendant with malice or reckless indifference to anti-discrimination laws, which protect Plaintiff.

42. As a direct and proximate result of Defendant's illegal conduct, Plaintiff has suffered, and continues to suffer, emotional distress, humiliation, embarrassment, pain and suffering, loss of reputation, loss of enjoyment of life, lost wages and benefits, and has incurred attorneys' fees and expenses and other serious damages.

## COUNT FOUR
## VIOLATIONS OF THE FAMILY AND MEDICAL LEAVE ACT

Plaintiff realleges each and every paragraph of this Complaint.

43. Defendant engaged in unlawful employment practices involving Plaintiff in violation of the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq*. These practices include, but are not limited to: altering the terms and conditions of Plaintiff's employment by demoting

her while she was on FMLA leave and terminating Plaintiff's employment because of her FMLA leave.

44. Plaintiff was retaliated against in the terms, conditions, and privileges of her employment after she exercised her rights under the FMLA.

45. The effect of the practices complained of above has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect her status as an employee because she exercised her rights under the FMLA.

46. The unlawful employment practices complained above were intentional and were performed by Defendant with malice or reckless indifference to the laws, which protect Plaintiff.

47. As a direct and proximate result of Defendant's illegal conduct, Plaintiff has suffered, and continues to suffer, emotional distress, humiliation, embarrassment, pain and suffering, loss of reputation, loss of enjoyment of life, lost wages and benefits, and has incurred attorneys' fees and expenses and other serious damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully prays:

a. That the practices of Defendant complained of herein be adjudged, decreed and declared to be in violation of the rights secured to Plaintiff by state and federal law.

b. That Defendant be required to make Plaintiff whole for its adverse, retaliatory and unlawful actions through restitution in the form of back pay, with interest of an appropriate inflation factor.

c. That Plaintiff be awarded front pay and the monetary value of any employment benefits she would have been entitled to as an employee of Defendant.

d.  That a permanent prohibitory injunction be issued prohibiting Defendant from engaging in the practices complained of herein.

e.  That Plaintiff be awarded compensatory damages in an amount to be determined at trial.

f.  That Plaintiff be awarded punitive damages as permitted by statute.

g.  That Plaintiff be awarded treble damages as permitted by statute.

h.  That the Court award Plaintiff her attorneys' fees, costs and disbursements pursuant to statute.

i.  That the Court grant such other and further relief as it deems fair and equitable.

PLAINTIFF DEMANDS TRIAL BY JURY ON ALL COUNTS WHERE TRIAL BY JURY IS AVAILABLE.

Dated: June 20, 2014.

**HALUNEN & ASSOCIATES**

Clayton D. Halunen, #219721
Ross D. Stadheim, #0392475
1650 IDS Center
80 South Eighth Street
Minneapolis, MN 55402
Telephone: (612) 605-4098
Facsimile: (612) 605-4099

*ATTORNEYS FOR PLAINTIFF*

## ACKNOWLEDGMENT

The undersigned hereby acknowledges that costs, disbursements, and reasonable attorney's fees may be awarded pursuant to Minn. Stat. § 549.211 to the party against whom the allegations in this pleading are asserted.

Dated: June 20, 2014.

_____
Ross D. Stadheim